IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CT-3208-FL

| WILLIAM C. CARAWAN, JR., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | ORDER |
|  | ) |  |
| BRAD PERRITT, KAYLA MERCER, PATRICIA A. BUFFKIN, JULIAN PRIEST, and GEORGE W. BAYSDEN, JR., | ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |

This matter is before the court on defendants' motion for summary judgment (DE 41) pursuant to Federal Rule of Civil Procedure 56.[1] The motion was briefed fully, and in this posture the issues raised are ripe for decision. For the reasons that follow, the motion is granted.

## STATEMENT OF THE CASE

On August 30, 2017, plaintiff, a state inmate proceeding pro se, commenced the instant civil rights action pursuant to 42 U.S.C. § 1983. Following an initial period of frivolity review,[2]

---

[1] Also pending is plaintiff's motion filed January 30, 2020, for extension of time to respond to defendants' motion (DE 50). Where plaintiff in fact filed a response on extended schedule to defendant's motion, with statement of facts, and appendix, on February 11, 2020, the court DIRECTS the clerk to terminate the motion as moot. The court deems plaintiff's February 11, 2020, response timely filed. The court inadvertently neglected to terminate the motion earlier upon filing of plaintiff's response.

[2] On September 12, 2017, the court allowed plaintiff to proceed in forma pauperis. On May 3, 2018, the court conducted its frivolity review of plaintiff's complaint and dismissed the action without prejudice. On May 14, 2018, plaintiff filed a motion for relief from judgment. The court granted plaintiff's motion on June 5, 2018, vacated its judgment, and directed plaintiff to file an amended complaint. That same day, plaintiff appealed the court's order dismissing the action to the Fourth Circuit Court of Appeals. On June 19, 2018, the appeal was dismissed upon plaintiff's motion to voluntarily dismiss the case.

the court allowed plaintiff to file the operative amended complaint, on June 27, 2018, asserting claims under the First Amendment to the United States Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq.

In particular, plaintiff asserts that defendants failed to accommodate his requests for fingerprinting for state and federal background checks as required to legally apply to change his name to his adopted Muslim name, Shaheed Karreem Shakoor. Defendants, sued in both their individual and official capacities, are Brad Perritt ("Perritt"), the Correctional Facility Administrator at Tabor Correctional Institution ("Tabor C.I."); Kayla Mercer ("Mercer"), a Tabor C.I. correctional sergeant; Patricia A. Buffkin ("Buffkin"), a Tabor C.I. case manager, Julian Priest ("Priest"), Tabor C.I. Assistant Superintendent, and George W. Baysden, Jr. ("Baysden"), Tabor C.I. Assistant Superintendent of Programs.[3]

As relief, plaintiff seeks unspecified money damages, and temporary and permanent injunctive relief mandating the North Carolina Department of Public Safety ("NCDPS") to amend its policy regarding fingerprinting so that it complies with N.C. Gen. Stat. § 101-5(a)(2), 28 C.F.R. § 16.32, and 14B N.C.A.C. 18B.0404. Plaintiff also requests that the court order Tabor C.I. to fingerprint him to allow him to apply for a legal name change for religious purposes.

Following a period of discovery,[4] defendants filed the instant motion for summary judgment on September 20, 2019, relying on a memorandum of law, statement of material facts,

---

[3] The court notes that plaintiff asserts different titles for some defendants than those indicated in defendants' affidavits. The differences are not material. The court identifies defendants applying the titles as reported in defendants' affidavits.

[4] On November 21, 2018, the court entered initial order regarding planning and scheduling, and appointed North Carolina Prisoner Legal Services, Inc. ("NCPLS") to assist plaintiff in discovery. On December 20, 2018, the court entered final case management order governing discovery and dispositive motions practice. The court granted two motions by defendants to extend case management deadlines and one motion to extend time to file dispositive motions.

and appendix of exhibits thereto, comprising the following:: 1) affidavit of defendant Perritt; 2) affidavit of defendant Baysden; 3) administrative remedy procedural documents regarding grievance filed by plaintiff on June 21, 2017; 4) administrative remedy procedural documents regarding grievance filed by plaintiff on May16, 2017; 5) NCDPS Director of Prison's Memorandum ("NCDPS Memorandum") dated March 22, 2013; 6) North Carolina Session Law 2011-303/House Bill 805; 7) affidavit of defendant Mercer; 8) affidavit of defendant Buffkin; 9) Tabor C.I. Inmate Request Form dated July 5, 2017; 10) Tabor C.I. Inmate Request Form July 13, 2017.

After seeking three extensions of time to respond,[5] plaintiff filed an opposition to the instant motion for summary judgment on February 11, 2020. In support, plaintiff relies on a statement of material facts and an appendix of exhibits thereto, which includes administrative remedy procedural documents regarding plaintiff's two grievance filings, the NCDPS Memorandum, and Tabor C.I. Inmate Request forms filed by defendants, as well as the following: 1) Letter to Senior Resident Judge of Columbus County; 2) Columbus County Clerk of Court response letter dated August 30, 2017; 3) relevant sections of defendant's responses to discovery; 4) NCPLS pro se prisoner legal name change packet; 5) legal name change packet from Columbus County Clerk of Court and response letter dated May 11, 2017; 6) instruction packet from the FBI; 7) instructions for a normal citizen of Columbus County in obtaining a legal name change; 8) Letter to Columbus County Clerk of Court regarding fingerprinting dated September 29, 2019; 9) Clerk of Court response letter dated October 4, 2019; 10) Letter from the North Carolina State Bureau

---

[5] Plaintiff filed two motions for extension of time to file a response to defendants' motion for summary judgment, which the court granted. On January 30, 2020, plaintiff filed a third motion for extension of time to file a response, addressed in preceding footnote one to this order.

of Investigation ("NCSBI") dated November 1, 2019; 11) Letter to the NCSBI dated October 29, 2019; 12) Letter from the FBI dated December 20, 2019; and (13) affidavit of plaintiff.[6]

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. Plaintiff is a practicing Muslim seeking a religious name change which is a custom of Islam. Plaintiff attests that he "holds it as a sincere belief that [he] is required to change [his] name from [his] birth name to the Arabic/Islamic attributes which describe [his] character" and "[t]he name change . . . represents leaving behind the old lifestyle(s) and beginning a spiritually disciplined life."  (Pl.'s Aff. (DE 53-13) ¶ 5).

For plaintiff to apply for a name change, he must obtain a state and federal record check. To receive a state and federal record check, plaintiff must submit his fingerprints. (Id. ¶ 20). Prior to plaintiff's request for fingerprinting from staff at Tabor C.I., the process for having fingerprints taken for applying for a legal name change were amended by N.C. Gen Stat. § 101-5(b) to read as follows:

> The clerk shall instruct the applicant on the process for having fingerprints taken and submitted for the criminal history record check, including providing information on law enforcement agencies or acceptable service providers. The clerk may require the applicant to provide any other information that the clerk determines is reasonably necessary for the fair and complete review of the name change application.

As a result of the amendment of N.C. Gen. Stat. § 105-5(b), NCDPS issued a memorandum instructing personnel regarding fingerprinting for the purpose of legal name changes stating as follows:

---

[6] Plaintiff submitted two copies of the same affidavit by him. One was submitted attached to plaintiff's response and the other was submitted with the appendix to his response. For simplicity, the court only cites to plaintiff's affidavit submitted within the appendix to his response.

4

> Due to change in protocol by the statute, inmates who request assistance in obtaining fingerprints for the legal name change process must now be told by facility management and/or staff to **"write to the local clerk of court[.]"** By law, the clerk of court in each county has sole authority over name change proceedings. At no time during an inmate's inquiry relating to legal name change should an inmate be told to "contact Prisoner Legal Services[.]"

Pl.'s Resp. App. Ex. 3 (DE 53-3) at 30 (bolding in original).[7]

Plaintiff requested several times for Tabor C.I. staff to fingerprint him for the legal name change process. Defendants testified that plaintiff was informed that Tabor C.I. staff are not permitted to fingerprint inmates for the purpose of obtaining a legal name change but only for sentencing purposes. (Perritt Aff. (DE 44-2) ¶ 6; Baysden Aff. (DE 44-3) ¶ 5; Mercer Aff. (DE 44-4) ¶ 6; Buffkin Aff. (DE 44-5) ¶ 6; see also Pl.'s Resp. App. Ex. 3 (DE 53-3) at 30). On May 16, 2017, Plaintiff filed a grievance alleging that Tabor C.I. staff refused to fingerprint plaintiff so that he could obtain his state and federal background checks. (Pl.'s Resp. App. Ex. 3 (DE 53-3) at 35). Tabor C.I. staff responded to the grievance as follows:

> In response to your grievance, [Tabor C.I.] staff does not fingerprint inmates upon inmate request. We do not provide fingerprints for background checks. The only occasion upon which . . . staff fingerprints an inmate is when an order is received from combined records for additional time. You have no pending request from combined records for additional time. No further action recommended.

(Id. at 36). That same day, plaintiff appealed the response. (Id.). On June 6, 2017, NCDPS staff found that the grievance was responded to properly and no further action was recommended. (Id. at 37). That same day, plaintiff appealed to the inmate grievance resolution board. (Id.). On June 7, 2017, plaintiff's grievance was dismissed because it was concluded that there was no

---

[7] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

supporting evidence that staff violated any policy.  (Id. at 38).

Plaintiff filed a second grievance on June 21, 2017, complaining Mercer and other Tabor C.I. staff members were denying plaintiff access to the courts by not allowing plaintiff to be fingerprinted.  (Id. at 31).  On July 6, 2017, staff at NCDPS resolved the grievance as follows: "[Tabor C.I.] does fingerprints only when ordered to do so by the court for additional time.  For any other issues about fingerprinting and issues dealing with the court contact programs staff.  No further action recommended."  (Id. at 32).  That same day plaintiff appealed the decision seeking "step two" response at the institutional level, (id.), but NCDPS administrators determined the grievance had been properly decided, (id. at 33).  Plaintiff appealed the step two response to the inmate grievance resolution board, but on July 7, 2017, the inmate grievance examiner dismissed the grievance finding no violation of prison policy or evidence of staff indifference.  (Id. at 34).

On July 3, 2017, plaintiff submitted an inmate request form to Buffkin inquiring about being fingerprinted for a legal name change.  (Buffkin Aff. (DE 44-5) ¶ 4; see also Pl.'s Resp. App. Ex. 3 (DE 53-3) at 28).  On July 13, 2017, Buffkin responded to the request and informed plaintiff, "You need to contact the Clerk of Court and request them to be set up.  [Tabor C.I. does] not schedule nor do[es] fingerprinting here at the facility for such matters."  (Id.).  That same day plaintiff submitted a second inmate request form stating that he needed to be fingerprinted as part of the procedure to obtain his state and federal background checks in order to change his name. (Id. at 29).  Buffkin responded on July 17, 2017, stating that he had already advised plaintiff regarding fingerprinting and again instructing plaintiff to contact the Clerk of Court.  (Id.).

Plaintiff also sent letters to the Columbus County Clerk of Superior Court.  (Pl.'s Resp. App. Ex. 5 (DE 53-5) at 15; Pl.'s Resp. App. Ex. 2 (DE 53-2) at 1; Pl.'s Resp. App. Ex 9 (DE 53-

6

9) at 1). On May 11, 2017, the Columbus County Clerk of Superior Court responded to plaintiff and stated that the clerk's office could not give plaintiff legal advice, sent a packet of information regarding special proceedings, recommended plaintiff have an attorney assist him in filling out the name change forms, and informed plaintiff that the Columbus County Sheriff's Department was the law enforcement agency used in acquiring fingerprints. (Pl.'s Resp. App. Ex. 5 (DE 53-5) at 15). The Columbus County Clerk of Superior Court responded to another letter on August 30, 2017. (Pl.'s Resp. App. Ex. 2 (DE 53-2) at 1). Plaintiff had requested that the clerk order prison officials to allow him to be fingerprinted. (Id.). The clerk of court informed plaintiff that he could not grant plaintiff's request and recommended that plaintiff seek help from NCPLS or other legal representative. (Id.). On October 4, 2019, the Columbus County Clerk of Superior again responded to a letter by plaintiff inclosing instructions provided to citizens of Columbus county requesting a name change, providing relevant internet resources, and recommending plaintiff contact an attorney. (Pl.'s Resp. App. Ex. 9 (DE 53-9) at 1).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law

8

Case 5:17-ct-03208-FL   Document 54   Filed 09/30/20   Page 8 of 14

should be denied. Id. at 489–90.

B.  Analysis

Plaintiff alleges defendants violated his rights under RLUIPA and the First Amendment's Free Exercise Clause by refusing to fingerprint plaintiff for the purpose of legally changing his name for religious reasons. In relevant part, RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of religion. See 42 U.S.C. § 2000cc-2(b). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, . . . or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

9

Under RLUIPA, if a plaintiff establishes defendants substantially burdened his religious exercise, the burden shifts to the defendants to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." 42 U.S.C. § 2000cc-1(a); Ozmint, 578 F.3d at 250. Maintaining security and good order is a compelling governmental interest. See Cutter, 544 U.S. at 725 n.13. Prison officials, however, must show that their policy "is the least restrictive means of furthering" security or operational interests. 42 U.S.C. § 2000cc-1(a); Lovelace v. Lee, 472 F.3d 174, 189 (4th Cir. 2006). "This is a strict scrutiny standard, requiring 'the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party.'" Greenhill v. Clarke, 944 F.3d 243, 250 (4th Cir. 2019) (quoting Holt v. Hobbs, 574 U.S. 352, 364-65 (2015)); see also Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012).

Although the standard is "exceptionally demanding," see Holt, 574 U.S. at 364, "Congress nonetheless anticipated that courts would apply it with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline consistent with costs and limited resources." Greenhill, 944 F.3d at 250 (quoting Cutter, 544 U.S. at 723). "While [prison officials] need not conceive of and then reject every possible alternative [to the policy, they do] need to demonstrate that [they] considered and rejected those alternatives set forth by [the plaintiff] both prior to litigation as part of the prison grievance process and through the course of the litigation in the district court." Id. at 251 (citing Holt, 574 U.S. at 371-72 (Sotomayor, J. concurring)).

As for the First Amendment, the Free Exercise Clause states that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. The United States Supreme

10

Case 5:17-ct-03208-FL   Document 54   Filed 09/30/20   Page 10 of 14

Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To establish a free exercise claim under the First Amendment, a plaintiff must show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 89–91 (1987). If the defendant satisfies the strict scrutiny test under RLUIPA, he also satisfies the reasonableness test set forth in O'Lone and Turner. See Lovelace, 472 F.3d at 186, 199-200.

Here, plaintiff fails to establish a substantial burden on his religious exercise as required to establish both his First Amendment and RLUIPA claims. Defendants advised plaintiff in accordance with N.C. Gen. Stat. § 101-5(b) to write to the local clerk of court for instructions on the process for having fingerprints taken and submitted for the criminal history record check that is required prior to applying for a legal name change. (Perritt Aff. (DE 44-2) ¶ 6; Baysden Aff. (DE 44-3) ¶ 5; Mercer Aff. (DE 44-4) ¶ 6; Buffkin Aff. (DE 44-5) ¶ 6; see also Pl.'s Resp. App. Ex. 3 (DE 53-3) at 30)). Plaintiff acknowledges that defendants informed him that staff at Tabor C.I. only fingerprinted inmates for sentencing purposes. (Pl.'s Aff. (DE 53-13) ¶ 3). Moreover, plaintiff has repeatedly communicated with the Clerk of Superior Court of Columbus County and received directions from the clerk regarding steps he should take to apply for a legal name change. (See Pl.'s Resp. App. Ex. 2 (DE 53-2) at 1; Pl.'s Resp. App. Ex. 5 (DE 53-5) at 1; Pl.'s Resp. App. Ex. 9 (DE 53-9) at 1). Plaintiff has presented no evidence that defendants prevented him from

11

Case 5:17-ct-03208-FL   Document 54   Filed 09/30/20   Page 11 of 14

obtaining fingerprints from other sources or contacting the local clerk of court for instructions regarding fingerprints.

The fact that plaintiff is incarcerated and indigent, and thus cannot comply with the clerk of court's instructions for obtaining a legal name change, does not mean defendants' policy of not providing fingerprinting services to assist inmates who wish to change their names substantially burdens his religious exercise. "The Free Exercise Clause affords an individual protection from certain forms of governmental compulsion; [in the absence of such compulsion] it does not afford an individual a right to dictate the conduct of the Government's internal procedures." See Bowen v. Roy, 476 U.S. 693, 700 (1986); see Lovelace, 472 F.3d at 187 (requiring showing that state actor substantially pressured plaintiff to violate his religious beliefs); see also Carawan v. Mitchell, No. 3:16-CV-577-FDW, 2018 WL 1187560, at *4 (W.D.N.C. Mar. 7, 2018) (noting "[c]ertainly if Plaintiff or any other prisoner has insufficient funds to pay for a money order so that he can [comply with Islamic requirements for charitable giving], then he cannot practice Zakat—but this is not the result of any action or inaction taken by prison administrators."), aff'd, 735 F. App'x 126 (4th Cir. 2018); Brown v. Hathaway, No. 5:09-CT-3004-BO, 2009 WL 10194651 at, *1 (E.D.N.C. Sept. 29, 2009) (finding that a state inmate had no constitutional right to notary public services or fingerprints).

The Free Exercise Clause of the First Amendment "protects an inmate's right to legal recognition of an adopted, religious name." Barrett v. Virginia, 689 F.2d 498, 503 (4th Cir. 1982); see also Ali v. Dixon, 912 F.2d 86, 90 (4th Cir. 1990) ([S]everal courts, including our own, have expressed approval of the addition of a prisoner's new name as a means of accommodating the prisoner's free exercise rights and the prison's interests in administrative continuity."). Thus, an

inmate's First Amendment's free exercise rights may be violated if he is "forced to acknowledge his religiously offensive name" as a precondition of receiving services or benefits to which he's entitled. Ali, 912 F.2d at 90. However, generally, prisons are required to recognize only legally changed names. See, e.g., Green v. Beck, 539 F. App'x 78, 79, 81 (4th Cir. 2013) (concluding plaintiff stated a claim that defendant violated his First Amendment rights where plaintiff alleged had legally changed his name for religious reasons and defendant maliciously refused to process request for name change on prison ID); see Malik v. Brown, 71 F.3d 724, 727 (9th Cir. 1995) ("[I]n states where inmates are allowed to change names legally, prisons are generally required to recognize only legally changed names."). While the Free Exercise Clause requires recognition of legally changed religious names, prison officials are not required to actively assist every prisoner with the administrative and legal procedures required to effect a name change. See Ali, 912 F.2d at 89; see also Brown, 2009 WL 10194651at, *1 (finding plaintiff had no constitution right to fingerprints).

In the instant case, as discussed above, plaintiff does not allege that correctional authorities are preventing him from being fingerprinted for the name change process, nor does he allege that prison authorities are conditioning his access to services or benefits upon plaintiff's acknowledgement of his religiously offensive name. Accordingly, plaintiff fails to establish a violation of RLUIPA or the First Amendment because the undisputed record evidence does not show defendants substantially burdened plaintiff's religious exercise.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion for summary judgment (DE 41). Also as set forth herein, the clerk is DIRECTED to terminate plaintiff's motion for

extension of time to file a response (DE 50) as MOOT. Finally, the clerk is DIRECTED to close this case.

    SO ORDERED, this the 30th day of September, 2020.

                                                  LOUISE W. FLANAGAN
                                                  United States District Judge